BOLT v. BOLT. (No. 744.)

(Court of Civil Appeals of Texas. El Paso. Nov. 1, 1917. Rehearing Denied Dec. 13, 1917.)

DIVORCE ⇐130—"CRUEL TREATMENT"—SUFFICIENCY OF EVIDENCE.

Evidence *held* insufficient to support a decree of divorce under R. S. 1911, art. 4631, subd. 1, requiring that "cruel treatment" be such as to render living together insupportable; there being no evidence that defendant's conduct was such as to impair plaintiff's health.

Appeal from District Court, Knox County; Jo A. P. Dickson, Judge.

Suit by Mrs. S. A. Bolt against T. A. Bolt. From the decree, defendant appeals. Reversed and rendered.

Jas. A. Stephens, of Benjamin, for appellant. Brookreson & Howell, of Benjamin, for appellee.

HARPER, C. J. This suit was instituted by appellee, Mrs. S. A. Bolt, against her husband, T. A. Bolt, appellant, for a divorce upon the ground of cruel treatment, and for a division of the community property, alleging that all the property held by them was community property, and asked for partition. Appellant answered by general demurrer, special exceptions, general denial, and specifically denied any cruel treatment. The cause was submitted to a jury upon special issues, and upon their answers a decree was entered for appellee, granting the divorce and for a division of the community property allowing appellant $1,600 as separate property, and decreed a partition of that found to be community property, and appointed appraisers, from which this appeal is prosecuted.

Three assignments of error are submitted for our consideration, urging: First, that the evidence is insufficient to sustain the decree of divorce; and, second, that the uncontroverted evidence is that the property was the separate estate of appellant.

The evidence discloses that the parties to this suit were married in 1876; several children were born to them—at the time of filing of this suit were all grown. Appellee testified to the following circumstances as having been the cause of the final separation:

"My husband and myself have had some trouble, but I do not remember how far back it was that I first began to complain about it, but it was about 1915. Mr. Bolt's brother came to our house and stayed a few weeks, and then went off. He came back three or four times—the last time in the fall of 1915, just before I left him December 7, 1915. He wanted to keep his brother, as I had told him before I was not able to wait upon him, and didn't want to keep him.

My husband replied, 'He is my brother; what must I do? I can't run him off.' I says, 'The way he treated me 25 years ago he is not going to live with us.' Then the day I left home we had all eaten dinner; they went out to the barn. We had a negro washing the dishes; I was standing by the stove putting up lard. * * * Mr. Bolt came in from the lot with a hammer in his hand; says, 'Alice, there is something I want to tell you.' I says, 'What is it, pretty straight.' He says, 'You have been saying around that Marion is not going to live with us.' He says, 'I'm going to keep him.' I says, 'If you do you won't keep me; he wasn't fit to stay around us.' He says, 'I don't give a damn if you leave. I hope you will leave, and stay left.' I says, 'If you want to keep him, put him in a house to himself or me one.' He said he wouldn't do anything such thing, and started to hit me over the head with a hammer. I stepped back of the stove, and he went to his room where his trunk was. I never seen the six-shooter, but I'm satisfied that he got it; he said if I didn't shut my mouth he would shoot my brains out. He wouldn't furnish me nothing to live on. I wasn't able to work. After that him and his brother came to town in a buggy, and I had to walk about 3½ miles. My health was not good during the fall of 1914; I had worked so hard. I was weak, and had nervous spells. At times Mr. Bolt would get angry before that time; I would say a few words, but he would start it. He has mistreated me badly. It was so hard to think that he would rather keep his brother than me—as faithful as I had been to him—I couldn't bear it."

On cross-examination:

"He started off with his brother before I left home, but he knew I was going because he passed the room and I was packing. He says, 'You are fixing up his clothes.' I said, 'No, I am fixing up my clothes. I am going to leave, and stay left,' and would have left regardless of whether his brother stayed or not, after he mistreated me and drawed the hammer on me the way he did," and further stated that her husband had always provided well for his family.

Defendant denied having attempted to strike her, and no one corroborates her testimony, though, according to her testimony, several persons were there or close by; however, this would make no difference, for the jury found that her testimony is true. So the question to be determined by us is: Is this evidence sufficient, taken as true, to be the basis for a decree of divorce? To be so held, it must be sufficient to bring the plaintiff's cause of action within the provisions of subdivision 1 of article 4631, R. S., which reads:

"Where either the husband or wife is guilty of excesses, cruel treatment, or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable."

According to all the testimony, there was no physical violence, in fact, nothing but a quarrel over whether the husband's brother should remain upon the place, and this had been righted by the husband taking his brother away immediately and before the appellee left the home. As is said in Eastman v. Eastman, 75 Tex. 475, 12 S. W. 1107:

"It has generally been held that when there is no physical violence, the cruel conduct, in order to warrant a divorce, must be such as to produce a degree of mental distress which threatens at least to impair the health of the injured party."

⇐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

But, of course, each case must stand or fall upon its own facts. There is no evidence that any thing done by the husband threatens to injure or impair her health, and she does not say that such is the case. We therefore hold that there is not that "full and satisfactory evidence" in the record as is required in rendering a decree of divorce. It appearing that the facts were fully developed, the cause will be reversed and here rendered for appellant.