JESSE McCULLOUGH v. BERTHA McCULLOUGH.

No. 5614. Decided March 18, 1931.
(36 S. W., 2d Series, 459.)

210

*Cook, Cook & Donaghey,* for appellant.

Article 1997, Vernon's Annotated Texas Statutes, Civil, among other things, provides: "Pleadings in civil suits in the District and County Courts shall:

"1: Be by petition and answer.

"2: Consist of a statement in logical and legal form of the facts constituting the plaintiffs' cause of action or the defendant's ground of defense.

"3: Contain any other matter which may be required by any law authorizing or regulating any particular action or defense."

District Court Rule 2 reads:

"2: Pleadings, with the exception of those presenting issues of law, must be a statement of *facts,* in contradistinction to a statement of evidence, of *legal conclusions,* and of arguments", * * *

Plaintiff in her petition declares upon only one ground for divorce, and being as provided in section 1 of article 4629, Vernon's Annotated Texas Statutes, Civil, which reads as follows:

"Art. 4629. Grounds For Divorce. Except where the husband or wife is insane, a divorce may be decreed in the following cases:

"1: Where either party is guilty of excesses, cruel treatment or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable."

Measured by these requirements, does plaintiff's petition present a state of facts authorizing a divorce?

Chief Justice Hemphill in the early case of Wright v. Wright, 3 Texas, 168, makes a clear statement of the rule, and, substantially, this rule has been followed by our courts in divorce proceedings.

A careful examination of plaintiff's pleading discloses many generalities and conclusions, but no fact is set forth affirmatively showing that defendant had been guilty of any act of excess, cruel treatment or outrage toward plaintiff.

She alleges he "denied plaintiff the privilege of seeing some of her kinspeople and refused to permit her brother-in-law to come on the premsises * * * and indicated from the tone of his conversation that he would harm said brother-in-law; that he denied her the privilege of seeing her girl friends; that she feared he would do her bodily injury and that it was unsafe for her to live with him," etc., but no fact is alleged that would reasonably warrant any fear upon her part, nor is there any fact alleged from which it might be inferred that he was arbitrary in his demands as to her kinspeople and brother-in-law; for all that is disclosed by the pleading, his injunctions in these regards may have been advisable and for her protection, admonitions, rather than tyrannical mandates.

It is also alleged that defendant began threatening the father and relatives of plaintiff and told her he was going to get them, indicating that he would do them bodily harm, and that he would get even with her and that this caused her to believe that he was going to do her bodily injury. No facts are stated justifying the alleged belief upon her part that he would do her, or any one else, any harm whatever. It would seem reasonable, that if plaintiff was so fear-struck she should be able to set forth some one fact reasonably calculated to be tortured into a bug-bear apparition of her solicitous mind and relieve the tension against her invited complaisant reliance by the court upon the offering of a distorted imagination.

We submit, the evidence in this case does not in any sense meet the requirements of this provision of the law. Her claim of nervousness and fear were undoubtedly self-induced as there is not a single act shown upon the part of defendant that could have occasioned such conditions. It will be noted, that the witness, Miss McCullough, introduced by plaintiff, although she resided for five months in the same house with plaintiff and defendant, did not recount a single act of mistreatment, or of unkindness, by defendant toward plaintiff. She says she saw plaintiff crying "occasionally", but this is not unusual with young wives.

She says he prohibited her from associating with her friends and threatened, and threatened. But how, in what manner and language?

.She admits they resided for months in the house with his parents, Dr. and Mrs. McCullough, and two nieces, and yet, neither say, nor the plaintiff, nor any of her friends have furnished the court or the jury with a single specific act of unkindness by the defendant toward the plaintiff; on the contrary, she says his importunities to her were to induce her to return and live with him, but, as she takes occasion to say, with his usual *argumentum baculinum*—that "he would get even with me, my friends and father", which is entirely inconsistent with her persistene entreaties for her to return and live with him. The real cause of her departure from his home has not been told; but certainly the evidence in this case falls far short of casting the shadow of blame upon the defendant, and

without some act wrongly intended upon the part of the defendant the sacred ties of marriage should not be swept away by the fretful wisp of a capricious wife.

*Marvin C. Culbertson,* for appellee.

A petition should state in full and clear manner the plaintiff's cause of action, but so long as the petition does show to all reasonable extends there can arise no grounds for demurrer thereto and that petition for divorce on grounds of cruelty, need not necessarily allege physical violence. The courts have repeatedly held that where a general demurrer is filed by the defendant in a divorce suit, such petition is entitled to the benefit of every reasonable intendment.

Appellant's main contention and objection relative to plaintiff's amended petition is that it does not allege any acts of physical violence on the part of husband toward wife, but on the other hand, plaintiff alleged and proves fear of physical violence on the part of defendant toward plaintiff; and that such conduct which aroused this fear in plaintiff caused her great physical suffering and made her very nervous which nervous condition continued for a number of months after said separation. That said facts were never denied by defendant but on the other hand were corroborated by witness, Geneve Agnes McCullough. The courts have given rather a liberal interpretation of paragraph 1, article 4629, in the Revised Civil Statutes, which reads as follows:

"Where either party is guilty of excess or cruel treatment or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable." Sheffield v. Sheffield, 3 Texas, 79.

Where the petition sets forth in full and clear statements, allegations of cruel treatment, proof as to render their living together insupportable, the question of what is meant by "insupportable" is a question of law, by the existence of the truth of the facts that amount to such outrages, making said living together insupportable, are for the jury to see from the evidence introduced. Sheffield v. Sheffield, 3 Texas, 36; Byrne v. Byrne, 3 Texas, 336; Sheffield v. Sheffild, 3 Texas, 79; Wright v. Wright, 3 Texas, 168; Nogees v. Nogees, 7 Texas, 538; Jones v. Jones, 60 Texas, 451; Sapp v. Sapp, 8 S. W., 258; Eastman v. Eastman, 18 S. W., 1107; Jones v. Jones, 41 S. W., 413; Jones v. Jones, 60 Texas, 451; Bush v. Bush, 103 S. W., 217; Golding v. Golding, 108 S. W., 496; Dawson v. Dawson, 132 S. W., 379; McNabb v. McNabb, 207 S. W., 129; Rowden v. Rowden, 212 S. W., 302; Burt v. Burt, 261 S. W., 406; Blake v. Blake, 263 S. W., 1075; Ellis v. Ellis, 251 S. W., 287; Lefevre v. Lefevre, 205 S. W., 842.

Mr. Commissioner CRITZ delivered the opinion of the court.

The certificate is as follows:

"This is a suit for divorce by Mrs. Bertha McCullough against the

appellant, in which the issues were submitted to a jury and in response to which the jury found that during the time plaintiff lived with her husband, he was guilty of cruel treatment, excesses and outrages toward the plaintiff of such a nature as to render their living together insupportable and that since plaintiff and defendant had separated, the latter had been guilty of conduct of such a nature as to cause a reasonable apprehension on the part of plaintiff that defendant would do her serious bodily harm if she should return to and live with him as his wife. Judgment was rendered for plaintiff dissolving the bonds of matrimony. The defendant appealed and the judgment was affirmed by this Court May 29, 1929, 20 S. W. (2d) 224.

"Defendant filed his motion for rehearing, insisting that the plaintiff's petition was insufficient as against a general demurrer to support the judgment and further insisting that there was no evidence which tended to show such excesses, cruel treatment or outrages toward plaintiff as to result in physical injury to her and there was therefore no evidence introduced upon which a judgment of divorce could lawfully have been rendered. The motion for rehearing was overruled.

"The defendant has filed a subsequent motion, still urging the points heretofore presented in the motion for rehearing with a great deal of emphasis and earnestness and insists that the questions involved be certified to Your Honors.

"Omitting the formal parts, the plaintiff's first amended original petition upon which the case was tried, is as follows:

" 'On or about the 16th day of September, A. D. 1922, Bertha Mc-Cullough, plaintiff, was duly and legally married to defendant in the County of Hardeman, State of Texas, and continued to live with him as wife at Quanah, Texas, until the 15th day of February, A. D. 1923.

" 'Plaintiff has been an actual bona fide inhabitant of the State of Texas for a period of twelve months, and has resided in the said County of Hardeman, where this suit is filed, a period of six months, next preceding the filing thereof.

" 'At all times, while married to the defendant, plaintiff has conducted herself with propriety, doing her duty as a wife, has at all times treated defendant with kindness and forebearance and has been guilty of no act of bringing about or causing the hereinafter described acts, omissions and conduct on defendant's part.

" 'That defendant, disregarding the solemnity of his marriage vows and obligation to treat plaintiff with kindness and attention, within about two weeks after the said marriage commenced a course of unkind, harsh and tyrannical treatment toward plaintiff which continued with very slight intermissions until plaintiff finally separated from defendant on the 15th day of February, A. D. 1923; that on or about the 1st of November, A. D. 1922, defendant denied plaintiff the privilege of seeing some of her

kinspeople and refused to permit her brother-in-law to come on the premises where plaintiff and defendant resided, and indicated from the tone of his conversation that he would harm said brother-in-law if he should come on their premises; that on or about said date he denied this plaintiff the privilege of seeing her girl friends, with whom she had been reared, stating that he did not want her to see them because they were country girls; that plaintiff was afraid that defendant would harm her if she should associate with the neighbor girls and friends.

" 'That immediately after they were married defendant carried her to the home of his parents where they resided until the date of said separation; that defendant was a very indolent man and worked very little of the time she resided with him, as set out above, and never provided this plaintiff with any clothing or necessities of life; that she repeatedly requested that they move into a home of their own, but defendant would refuse and promise that they would move in the future.

" 'That defendant was insanely jealous without cause and would not take her to any place of amusement or entertainment; that as a result of said jealousy he would come home fussing and quarreling and threatening her friends and would threaten her relatives and kept her in a state of unrest and fear at all times for their safety and her own safety.

" 'That from about the 1st of November, A. D. 1922, up until the date of said separation, this plaintiff was constantly bothered and worried about her safety, and in great fear that defendant would do her bodily injury or injure her father and relatives and that she was kept in such a state by repeated threats and talks by this defendant; that in consequence of the cruel and inhuman treatment above mentioned, together with the threats aforesaid has rendered it unsafe for plaintiff to live with defendant or to remain within reach of his violence; that about three months prior to date of said separation, defendant began threatening the father and relatives of this plaintiff and told plaintiff that he was going to get them, indicating that he would do them great bodily injury, and that he would get even with her which caused her to believe that he was going to do her bodily injury and kept her in a state of fear up to the date of said separation; and that on or about the time defendant began threatening plaintiff's relatives and threatened to get even with this plaintiff, defendant became less affectionate and seemed to care less and less for this plaintiff, up until the date of said separation; that said threats which were made by this defendant caused plaintiff great physical suffering and caused her to be very nervous and as a result of such nervous condition, plaintiff cried a great deal of the time during the last two months that she lived with this defendant; and it took her about three months after the date of said separation for plaintiff to overcome this nervousness; that defendant was physically able to execute the threats made to this plaintiff for plaintiff knew the defendant was very high tempered and at the time he would

get angry she could not reason with him and that he was insanely jealous of her girl friends and kept her in a state of fear that he would do her bodily injury as well as injure said friends; that on the date prior to the said separation he repeated said statement and said that he would get them and that he would get even with her, and that said threats and remarks were made without any provocation on the part of this plaintiff; which remarks and threats kept plaintiff in such a state of fear that she felt unsafe to remain within reach of this defendant for fear that her life would be in danger; that plaintiff was on or about the 15th day of February, A. D. 1923, obliged to leave and did leave the house of defendant, since which time plaintiff has not dared to return to defendant or live with defendant as husband and wife; that their marriage relations as husband and wife still exist.

" 'That soon after the date of said separation this defendant began bothering and harassing plaintiff and tried to compel her to return to him, that defendant would send messages to her requesting her to meet him and talk with him privately about returning to his home; that she was advised by friends and officers not to talk with him alone for fear that this defendant would do her bodily injury; that since said separation this plaintiff has been afraid of said defendant and afraid he was going to do her great bodily injury; that he has tried to get some of her friends to take her out riding in defendant's car in order that he could get her away from the place where she was working and carry her off; that said friends have come to plaintiff and told her that he had planned to accomplish this act on several occasions, but that said friends refused to assist him; that said plaintiff has been working as a student nurse for over three years in a local hospital in Quanah, Texas, where she has been making her living and paying her expenses; that during the time she has been studying and working, this defendant has threatened the owner of said hospital and tried to compel him to discharge her as a nurse and threatened to cause trouble if same was not done, which acts of defendant have kept this plaintiff in a state of fear.

" 'Plaintiff alleges that defendant's actions and conduct toward her generally are of such a nature as to render their further living together as husband and wife insupportable, the premises considered.'

"The plaintiff, Bertha McCullough, and defendant's niece, Agness McCullough, were the only two witnesses who testified. Their testimony, as set out in the statement of facts, is as follows:

" 'My name is Bertha Jones McCullough. I was married to the defendant September 16, 1922. I have resided in Hardeman County, Texas, about twenty years prior to filing this suit. I separated from this defendant the 15th of February, 1923, since which time we have not lived together as husband and wife.

" 'The cause of our separation was neglect to provide a home, and

his cruel and harsh treatment towards me, all my friends, and family. About two months after our marriage the defendant began making threats to my family. He also prohibited me from associating with my friends, he told me not to have them come to my house, that they were just country girls. Those girls did not come up to my house any more. I was afraid to have them come up. I was afraid that he might do me bodily injury in some way; he was able to do it. The threats that he made to my parents was that he would get my father, and he also said he would get even with me. He would say that when he was threatening my people, and that caused me some fear. I was kept in this state of fear about three months before we separated, and as a result of such threats it caused me some nervousness. It just kept me nervous and torn up, just looking for something to happen all the time. It kept me crying. As a result of this it was about three months after we separated before I overcame the nervousness. I did not give the defendant any cause to threaten any of my people. He was physically able to execute these threats. Along about the time that he began making these threats towards my people and threatening to get even with me, I noticed a change in his affection with me, his affection decreased. This caused me to believe that he meant what he said when he said he would get ever with me and get my people. His affection decreased up to the time of our separation.

" 'During the time I lived with my husband we lived in the house with his father and mother, the whole five months. Besides his father and mother there were some nieces of his there, two of his nieces. They saw me practically every day, and they saw me crying. However, I didn't tell them why I was crying, I didn't say anything to them about it.

" 'Under the circumstances, from the threats he has made and the fear he has caused, I could not live with him now as husband and wife. Since the date of our separation the defendant has entreated me several times to return to him, and I am afraid to.

" 'The defendant tried to cause some trouble with me about the time I began my course as student nurse, he tried to get them not to take me, and threatened them, and caused trouble all during the course of my training. This caused fear to me from him.

" 'I was persuaded to meet him down here in the sheriff's office. Also he would catch me down on the streets as I would be down town, or be on my way home, and he would come up and catch me and try to go home with me.

" 'The defendant was wanting me to come back and live with him, that is what he would always say, but he would always say that he would get even with me, my friends, and father. He frequently met me on the streets and wanted me to come back and make up, but I wouldn't talk to him.

" 'We were living there at Dr. McCullough's and were about to

move away out to the farm, but he never had made any preparations to move. He said we would move to the farm, but when I left him the 15th day of February there had been no preparations made to go to the farm. It was talked and understood that that is what we were to do, but he made no preparations to go.

" 'The defendant objected to his brother-in-law coming to our home, he said if we moved to the farm that he would not be allowed on the place. He said he objected to him coming there on account of his being arrested for stealing, and tried, and so on. If this brother-in-law had been in jail I didn't know it.

" 'I was reared about twelve miles northwest of Quanah. There was not anything wrong with those girl friends other than they were just country girls, and that is the reason he didn't want me to see them. They were my neighbors, I had been associating with them and going to school with them prior to the time I had married. I had been associating with them for several years.

" 'I would cry from nervousness most every day during the week for the last two months before we separated.'

" 'My name is Geneva Agnes McCullough. I am a niece to the defendant in this case. I knew Mr. McCullough and Mrs. McCullough when they lived together, I was living in the house with them at that time; I lived with my grandparents. At that time I was going to school. I was fourteen years old at the time that Mr. and Mrs. McCullough moved into this house, and I saw them every day. They had their own room and took their meals with the whole family.

" 'I saw Mrs. McCullough crying while I was there, I saw her crying on quite a few occasions. She cried during the last month they were living together. I do not remember how many times a week I saw her crying, but it was just occasionally—quite a few though. I had occasion to ask her what the trouble was, but she would not tell it.'

"Since the case is one which can not go to the Supreme Court by writ of error we have decided to grant the motion to certify and therefore certify to Your Honors the following questions:

"(1)  Is the plaintiff's petition sufficient as against a general demurrer?

"(2)  Was there any evidence to sustain the statutory grounds for divorce set out in the petition?

"(3)  Is the evidence sufficient to support the judgment?"

OPINION.

In our opinion the petition for divorce filed in the district court by the appellee was sufficient as against a general demurrer. It states matters showing the jurisdiction of the district court of Hardeman county, Texas, under article 4631, R. C. S. of Texas, 1925. Also the petition

alleges the statutory ground for divorce under subdivision 1 of article 4629, R. C. S. of Texas, 1925. In this connection we hold that a divorce granted by a court of competent jurisdiction on a petition which merely alleged the defendant has been guilty of such excesses, cruel treatment and outrages against the plaintiff of such a nature as to render their further living together insupportable, is good against a general demurrer. Of course such an allegation, in a way, is the pleading of a conclusion when tested by proper special exception, but when tested by a general exception, it is a sufficient allegation of a fact, to authorize the district court to hear the evidence, and on which a valid decree of divorce may be awarded.

As to the second question certified, we think there is some evidence in the record tending to support the allegations of cruel treatment contained in the petition. It is the settled law of this state that the cruel treatment provided by our statute as a ground for divorce is not confined to physical violence alone, but may consist of a series of studied and deliberate insults and provocations. The question is whether the course of treatment constitutes such "excess, cruel treatment, or outrages", as to render further living together insupportable. In determining this question it is the duty of the trial court to weigh the course of conduct in the light of all the facts and circumstances of the case, and this includes the character and refinement of the parties to the proceeding. In other words, vile epithets constantly hurled by the husband at a wife of refinement might constitute "excesses, cruel treatment, or outrages" of such a nature as to render her further living with him insupportable, when the same epithets hurled by the husband at a wife of low morals and vile character might not constitute such excesses, etc.

In the case at bar it is shown that the husband threatened to get the father and relatives of the wife (meaning to do them some great bodily harm); that he was unusually jealous without cause; that he constantly quarrelled, nagged and fussed with the plaintiff, and threatened her and her friends with bodily harm; and that by his general conduct, words, and actions, he kept her in constant fear for the safety of herself, her father, and her friends, and kept her in a very highly nervous and apprehensive condition. This certainly constitutes a course of cruel treatment towards the wife, and constitutes some evidence in support of the grounds of divorce alleged in the petition.

It is contended by appellant that where there is no actual physical violence shown, the excesses, cruel treatment, and outrages must, in order to warrant a divorce, be such as to at least produce a degree of mental distress which threatens to impair the health of the wife. In support of this contention appellant cites Eastman v. Eastman, 75 Texas, 475, 12 S. W., 1107; Ryan v. Ryan (Texas Civ. App.), 114 S. W., 464; Demmer v. Demmer (Texas Civ. App.), 289 S. W., 441; Hubbard v. Hub-

bard (Texas Civ. App.), 231 S. W., 160; Bolt v. Bolt (Texas Civ. App.), 199 S. W., 309; Bush v. Bush (Texas Civ. App.), 103 S. W., 217. It is further contended that there is no evidence in this record tending to show that there is any impairment of the wife's health threatened.

The only Supreme Court case cited above is the Eastman case. We think that the opinion in the Eastman case, taken as a whole, does not sustain the above contention. In the Eastman case Judge Gaines first repudiates the idea that physical violence constitutes the only ground of divorce. He then holds that cruelty other than physical violence is a ground for a decree of separation from bed and board in the ecclesiastical courts of England, and that the rule in such courts is that if the conduct of the defendant is such as should reasonably be held to threaten an impairment of the health of the wife, a decree of separation will be granted. Judge Gaines then proceeds to state that our statutes allow a divorce "where either the husband or wife is guilty of excesses, cruel treatment, or outrages towards the other, if such ill treatment is of such a nature as to render their living together insupportable." In other words, under our statutes, the test is not whether the treatment is of such a nature as will likely impair the wife's health, but whether it is of such a nature as to render further living together insupportable. Also under our law the divorce a mensa et thoro (from bed and board) is unknown. The above interpretation of the opinion in the Eastman case is fortified by the fact that Judge Gaines cites with approval the opinion of Judge Hemphill in Sheffield v. Sheffield, 3 Texas, 79.

In the Sheffield case, supra, Judge Hemphill, speaking for the Supreme Court, refers to the fact that cruelty is a ground for divorce a mensa et thoro (from bed and board), under the ecclesiastical law. He then proceeds to discuss what is meant by cruelty under the ecclesiastical law, and holds that thereunder proof must be given of a reasonable apprehension of bodily hurt, and, that austerity of temper, petulance of manner, rudeness of language, and want of civil attention, and even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty, against which the ecclesiastical law would relieve. Judge Hemphill then proceeds to hold that our statute covers more ground than is embraced under the legal definition of cruelty, in that it provides for a divorce where the ill treatment be of such a nature (without personal violence), as to render further cohabitation insupportable. Nowhere in the Sheffield case is it even hinted that under our statute the cruel treatment must be such as to threaten to impair the health of the wife.

We therefore hold that the excesses, cruel treatment or outrages provided in our statute as a ground for divorce are sufficient if they are of such a nature as to render further living together insupportable, and that without regard to whether such treatment is of such a nature as to threat-

en the impairment of the physical health of the wife. Of course the sacredness of the marriage relation should be kept in view and divorces should not be granted on trivial matters or disagreements.

We are aware of the fact that the opinions of several of the Courts of Civil Appeals support the contention of the appellant, but we think that the several holdings should be overruled.

Furthermore, in the instant case there is a showing of impairment of health, in that it is shown that the wife was kept in constant fear, and in a highly nervous condition.

The third question certified presents a question of fact and not of law. The Supreme Court may exercise its jurisdiction either by means of an answer to a certified question or through grant of a writ of error, but in both instances the jurisdiction is confined to questions of law. Owens v. Tedford, 114 Texas, 390, 269 S. W., 418. This rule applies to divorce proceedings the same as any other civil suit. It follows that the Supreme Court is without jurisdiction to answer the third question.

We recommend that the questions certified be answered as above indicated.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. Cureton, Chief Justice.