## HOFFMAN v. HOFFMAN.
### No. 10970.

Court of Civil Appeals of Texas.
San Antonio.

June 18, 1941.

Walter C. Wolff and Charles J. Lieck, both of San Antonio, for appellant.

Schlesinger, Schlesinger & Goodstein and J. Douglas McGuire, all of San Antonio, for appellee.

MURRAY, Justice.

This is an appeal from a judgment granting Ruth Hoffman a divorce from her husband, Rollo Hoffman, and further providing for a division of their community property by having same sold through a receiver.

The trial was before the court without the aid of a jury and after hearing much testimony the divorce was granted. There are no findings of fact or conclusions of law in the record, so, therefore, if there is evidence to support the judgment it must be affirmed by this Court. In fact the only question raised is the insufficiency of the evidence to support the judgment.

Ruth Hoffman and Rollo Hoffman were married in Arroville, State of Washington, on or about October 2, 1908, and thereafter lived and cohabited together as husband and wife until on or about September 16, 1939, at which time they separated. On September 18, 1939, this suit for divorce was filed.

Ruth Hoffman sought a divorce upon the ground that Rollo Hoffman was guilty of excesses, cruel treatment and outrages toward her of such a nature as to seriously injure her health and to render their living together insupportable.

The evidence shows that appellant, Rollo Hoffman, was a man of ungovernable temper, extremely dictatorial and autocratic toward his wife and children; that he had for a number of years pursued a course of harsh, unkind and cruel treatment toward them and had been guilty of a number of specific acts of cruelty to his wife and children. As a result of such conduct on the part of appellant, appellee's health became seriously impaired to a point where she was no longer able to carry on under the strain and was finally forced to separate and file this suit for a divorce.

Among the specific acts of violence shown by the evidence was the severe whipping of their fifteen-year-old daughter because she returned fifteen minutes late from a school exercise. When appellee urged him not to whip the girl, but to give her a chance to explain, appellee was struck in the mouth and knocked over a chair. The girl escaped and ran across the street, but was pursued by appellant and dragged back to the house, but the whipping was not continued when the neighbors came in. However, she was required to pray for forgiveness on her bended knees while he stood over her with a limb from a peach tree raised in a threatening manner.

Appellee and her children were unable to have any friends because, invariably, appellant would insult any friends who came to call on them by telling them to leave. Appellant claimed to be filled with the Holy Spirit and therefore what he did was right and anything they did was wrong. When any member of the family would get sick he would attribute it to their lack of religion and would tell them that if they would be governed by the Holy Spirit, as he was, they would not get sick. In other words, the trial court would have been warranted in concluding from the evidence that appellant was using his often mentioned religion as an attempted justification of his cruel treatment of his wife and children.

At times he would threaten to close the store and thereby stop the source of a livelihood for appellee and her children. He would threaten to quit making payments upon the home to the H. O. L. C., so that it would foreclose its lien and leave the family without a suitable home, or, on some occasions, he would threaten to give the H. O. L. C. a quitclaim deed to the home.

On one occasion he spent much time sharpening the butcher knives and after they were well sharpened he ordered the family to assemble in the living room of the home and then told them, in effect, that a rattlesnake never struck without first giving warning and this was his warning

to them. That they could now consider that they had been warned.

The course of conduct of appellant kept appellee in constant fear for her life and that of her children and seriously impaired the health of appellee. She had to be placed under the care of a doctor. Since separating from appellant, appellee's health has improved but she is still unwell.

The evidence is quite lengthy and we have not attempted to state all of it here, but it is sufficient to support the judgment rendered, and the court did not err in granting the divorce. McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459; Kreiter v. Kreiter, Tex.Civ.App., 137 S.W. 2d 184, 185.

Appellant contends that the specific acts of violence were condoned by appellee when she continued to live with him after the acts were committed. Appellee testified that she did not leave appellant sooner as she had no means of support for herself and her minor children. She had also hoped his conduct would improve but instead it grew worse. Under such circumstances she did not condone these acts of violence. If the rule was otherwise, where a divorce was sought on the grounds of cruel treatment only the last cruel act could be considered as all other acts would be condoned. McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459.

There is no complaint made as to that part of the judgment which disposes of the community property.

The judgment is affirmed.