## GRYWALSKI v. GRYWALSKI.

### No. 3142.

Court of Civil Appeals of Texas. Waco.

Dec. 21, 1953.

Rehearing Denied Jan. 14, 1954.

Benjamin D. Lucas, San Antonio, for appellant.

John M. Barron, Bryan, for appellee.

TIREY, Justice.

Appellee (a Captain in the Air Force) brought this action for divorce against appellant in the District Court of Brazos County. The cause was tried without the aid of a jury and the court overruled a plea to its jurisdiction and granted the plaintiff a divorce and awarded the care and custody of the two children, a boy four years of age and a baby girl about nine months of age, to the mother and made provision for certain contributions to the children, and divided the property, to which action of the court defendant excepted and perfected her appeal to this court. There was no request for findings of fact and conclusions of law and none was filed.

Point 1 assails the judgment of the court in overruling defendant's plea to the jurisdiction of the court and Point 2 is to the effect that plaintiff failed to establish his right to a divorce by clear and convincing proof.

The appellee was born in the State of Ohio and lived there until he entered the military service in 1945; he was stationed first in Texas at Sheppard Air Force Base; was transferred from that base to Lackland Air Force Base in 1946 and was there commissioned a second lieutenant; thereafter he was transferred to Randolph Air Force Base in San Antonio, and while there as a student officer in the Air Corps he met appellant in August 1948, and they were married the 6th of November, 1948. Their first child, a boy, was born August 19, 1949, and the second child, a girl, was born August 30, 1952. They lived in San Antonio until February, 1949, when appellee was transferred to Williams Field, Arizona; he served there until July, 1949, at which time he was transferred to Turner Air Force Base in Albany, Alabama, and while there was sent on a tour of duty to Puerto Rico; he was returned to San Antonio about the middle of March, 1950, and lived there with his wife, at 235 Corona Street in San Antonio, until about May 28, 1950, at which time he purchased a home at 241 Seford Drive, San Antonio, and appellee lived in said home with his family until he was transferred to Okinawa on the 10th of June, 1950, leaving his wife and baby at their San Antonio home. While he was overseas he was also stationed in Korea

and Japan. Appellee further testified in part that his trouble with appellant was: "Well, lot of little things, but the big things were—all the time I was overseas I could not get any mail from her. * * * I think the first six months I was overseas I got three letters from her and the last month I did not get any mail from home. * * * I got nervous over this condition and contacted the Red Cross and had it to check and find out the trouble." Testimony was tendered to the effect that he called his wife several times over long distance while overseas and that his wife called him twice. Appellee further testified to the effect that while engaged in combat missions, the fact that he could not hear from his wife and baby caused him to have mental disturbances and interfered with his duty as a combat flyer and he was returned to Tokyo and was thereafter sent back to San Antonio and arrived there on December 6, 1951; that prior to his return he caused suit to be filed for divorce on May 3, 1951 in the District Court of Bexar County, Texas. Upon his arrival in San Antonio he contacted his wife and found that she had contracted a severe case of poliomyelitis while he was overseas and she had just been released from the hospital the day before he returned (December 7, 1951). This attack of poliomyelitis had severely injured appellant's right limb and ankle and had caused her to have some facial paralysis and she was unable to do any work. Upon his return he and his wife had a reconciliation and the divorce suit was dismissed and they resumed the relationship of husband and wife. Testimony was tendered to the effect that appellant became pregnant (in December) shortly after her husband's return and that appellee was at their home in San Antonio for some three weeks when he left for Bryan Air Force Base; that he left her alone with a sick baby although he did not have to report for duty until sometime the following January; that appellee was transferred to Maxwell Field, Alabama, about January 25, 1952; that she and the baby accompanied him and they were stationed there for eight weeks, at which time he was returned to the Air Base at Bryan and she returned to their San Antonio home,

where she remained until about the 8th of October, 1952; that the occasion for her remaining in San Antonio was to await the birth of her second child, which was born August 30, 1952; that appellee rented a house on Foch Street in Bryan and moved her and the children and some furniture to this location about October 8, 1952, and they lived there for about six weeks, after which appellee gave up his Bryan residence and sent appellant and the children and the furniture back to their San Antonio residence and appellee went to live at the Bachelors' Quarters at the Base; that since that time appellee has had no other residence at Bryan except such Bachelors' Quarters.

On the question of cruel treatment the appellee testified in part:

"Q. The Court wants to know the nature of the trouble? A. They are little things.

"Q. The little things seem to be what brought you apart? A. I could not figure out what was the real trouble with her. We had been separated for something like 13 days—she got up here in September. I had gone to San Antonio to see her and the children and kept thinking about bringing them back to see if we could make a go. Jean and I would sit down and talk it over and see if we could make a go and that is I would try doing my one half and she doing her one half to make a go, and we come out again in the same manner, right back to where we were six months ago instead of any improvement it kept getting worse.

"Q. You think you could ever live with her as a wife? A. No sir I could not.

"Q. Does she give any indication of her willingness to live with you? A. Not in my opinion no sir. * * *

"Q. Did the family difficulty affect your efficiency as an officer? A. It did sir. * * *

"Q. Captain has she told you that she would give you a divorce after her

face and ankle were all right? A. She has told me. She went back to San Antonio and she was to get the divorce, that is the only reason I waited, and she was going to get some medical attention and after she did that then get the divorce and she just rocked along for two years and still there was no action taken, and the last time she was in the hospital it was in February, February 3rd.

"Q. Captain what is the necessity of your getting the divorce right now, you want to marry some one else? A. I do not.

"Q. Why do you need a divorce? A. Strictly for peace of mind and get away from all this disagreement.

"Q. You are not living with it? A. You can't do anything if your mind is not at rest, when it can all be straightened out, I can't see it. If it was strictly my living or her living it would be different, but it is my students, and you can't give them careful and complete instructions with something like this hanging over your head. * * *

"Q. You can't see your way clear to wait until her operation? A. No. * * * I have waited two years waiting for her to get the necessary medical treatment. My only request to her was to go to the hospital, she would not go to the hospital until January 20th, the Brooke General Hospital, from November to January 20th, for any treatment of any partial paralysis that might have stayed on after the polio."

There was tendered in evidence the following medical report from the Brooke Army Hospital at Fort Sam Houston, Texas:

"Mrs. Grywalski has been followed in the Physical Medical Service since 9 Oct. 1951. She was originally hospitalized at the time with a diagnosis of acute poliomyèlitis. The patient was discharged from the hospital on 24 Jan. 1952 and since then has been followed as an outpatient. Initial involvement included partial paralysis of trunk and lower extremity musculature plus weakness of the left facial musculature. She gradually gained in strength in regards the lower extremity but marked weakness has persisted about the right ankle joint with imbalancing features which could lead to deformity here requiring surgical procedure at a later date. She was last seen in the Orthopedic Clinic in February of this year. It was felt by the surgeons there that surgery should not be done at this time, but that she should be re-evaluated in about six months for consideration of same. The facial musculature on the left continues to be weak and the patient has been considered for possible surgery thereon. However, again final decision concerning the optimum date for performing such surgery is postponed for a period of approximately six months. In the meantime she has been advised on a therapeutic exercise program to be carried out on her own and it has been recommended that she continue to wear a brace on the right lower extremity to prevent gross deformities about that ankle."

Appellant testified to the effect that she was in love with appellee and desired to live with him as his wife and to make a home for him and their two children; that their quarrels were due to the fact that she had information that her husband was having dates with other women, and that after her illness appellee complained that he was embarrassed because of her physical condition and that she did not wear the brace for her right limb when they went out; that he complained to her because of her facial paralysis and that this embarrassed him. Appellee denied that he was having dates with other women and denied that he was embarrassed by appellant's physical condition.

Evidence was tendered to the effect that after appellee sent his wife and children back to their San Antonio home, which was about November 12, 1952, that he visited appellant and the children at their San Antonio home at least twice before filing this suit for divorce, the last visit being in the month of March 1953, and the other visit being several weeks before. Evidence was also tendered to the effect that the divorce suit was filed about April 30, 1953. (This date is not shown in the transcript.) The decree recites that the case was tried in June, 1953, but it was actually signed and entered on the 14th day of July, 1953. The decree recites that at the time it was entered the boy was 3½ years of age and the daughter was 9 months old. Testimony was also tendered on the trial to the effect that appellee was 23 years old and appellant was 22.

The first question that must claim our attention is: Did the trial court err in overruling appellant's plea to the jurisdiction? Our view is that it did. Our Supreme Court in Commercial Credit Corp. v. Smith, 143 Tex. 612, 187 S.W.2d 363, 366, made this statement of the rule: " 'A soldier or sailor does not acquire a new domicile merely from being stationed at a particular place in line of duty. His domicile remains the same as that which he had when he entered the service, unless he shows a change by proof of clear and unequivocal intention.' " The Supreme Court has not seen fit to change this rule. In Gallagher v. Gallagher, Tex.Civ.App., 214 S.W. 516, 518, we find this statement of the rule of evidence which we think is applicable here: "Ordinarily, it is a presumption of law that where a person actually lives is his domicile, such presumption of course being rebuttable; but no such presumption could arise in the case of a soldier in active service, who has no choice of domicile, but must ordinarily cling to his domicile of origin. Ordinarily, an act of removal to a certain location, coupled with the intent to make a permanent residence there, might be sufficient to fix a domicile, but that is because the removal is voluntarily made,

which could not occur in the case of a soldier in active service."

The record here is without dispute that appellee selected San Antonio as his permanent residence and bought a home there and used it and enjoyed it with his wife and family before going overseas. After his return from overseas duty he again occupied, used and enjoyed it. It is true that on his last assignment he was transferred to the Air Force Base at Bryan and he did rent a house and move his wife and children there and when he decided to separate and live apart from his wife and children he returned them to the homestead of appellant and appellee in San Antonio, Texas. It is true that he testified to the effect that he intended to make Bryan his home and that he had in effect changed his residence from San Antonio, Texas, to Bryan, Texas, but it is our view that under the record here made the testimony tendered does not show a change of such residence by intention by proof that is clear and unequivocal and in accord with the rule announced by our Supreme Court in Commercial Credit Corp. v. Smith, supra. See also Wilson v. Wilson, Tex.Civ.App., 189 S.W.2d 212, and cases there collated. See also Tex.Jur., 10 Year Supp., 1937–47, Vol. 4, Sec. 72a, p. 320, and cases there collated.

If we be mistaken in our views on jurisdiction, then it is our duty to pass upon the merits of this case. Accordingly, we will now discuss briefly our views as to whether the appellee has carried his burden on the merits of the case. Our view is that he has not. Needless to say that this cause has given this court great concern because of the general surrounding circumstances and the great strain that these two young people have been through since their marriage. Surely, appellee was under great tension while serving overseas, flying combat missions and not hearing regularly from his wife and baby. Likewise, it is evident that appellant was under great strain, knowing that her husband was on combat duty. It is true that she was in their home with a young baby, but it is not clear whether the allotments made by appellee were sufficient

to support her and the baby in this home. Under these conditions she became ill with poliomyelitis, which left her with a facial paralysis and with a severe injury to her right limb and ankle. It is conceivable that the foregoing conditions, plus appellee's suit against her for divorce, filed in the District Court at San Antonio while he was overseas, and her illness and physical impairment, would have a tendency to make her irritable and nervous. But notwithstanding the great tension that appellant and appellee had been under, upon his return from overseas duty it required a very short time for them to effect a complete reconciliation and there was a full and complete condonation of all the trouble that had existed between them. When appellee took appellant and the two small babies to Bryan Air Force Base after he was stationed there, his complaint against appellant is to the effect that their troubles were trivial except that when she quarreled with him at night about his keeping company with other women and neglecting her, this quarreling at times kept him awake all night so that he could not rest and could not perform his duties as an officer in instructing jet pilots. Under the record here made, we think it was appellee's duty to conduct himself in such manner as to relieve his wife of any suspicion that he was untrue to her before he could invoke the provisions of the divorce statute to relieve himself of his marital obligations.

Our Supreme Court in McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459, 463, reviews some of the early landmark decisions of our courts dealing with divorce and announces the following rule: "We therefore hold that the excesses, cruel treatment, or outrages provided in our statute as a ground for divorce are sufficient if they are of such a nature as to render further living together insupportable, and that without regard to whether such treatment is of such a nature as to threaten the impairment of the physical health of the wife. *Of course the sacredness of the marriage relation should be kept in view, and divorces should not be granted on trivial matters or disagreements.*" The Supreme Court has not seen fit to change this rule.

It is the view of this court that the proof here tendered is not and was not that full and satisfactory proof contemplated by the legislature and as interpreted by our courts as being sufficient to establish cruel treatment and render further living together of these parties insupportable.

However, since we are of the view that the appellee failed to show by clear and convincing proof that he had acquired a domicile in the County of Brazos, within the meaning of Art. 4631, Rev.Civ.Stats., as amended, Vernon's Ann.Civ.St. art. 4631, and under the construction given thereto by our courts, it is our duty to reverse the judgment of the trial court and dismiss this cause.

Accordingly, the judgment of the trial court is reversed and the cause is dismissed.