**Affirmed and Memorandum Opinion filed July 29, 2021.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-20-00055-CV

**WIESLAW ORZECHOWSKI, Appellant**

**V.**

**ELZBIETA ORZECHOWSKA, Appellee**

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-27927**

## MEMORANDUM OPINION

In this appeal from a final decree of divorce, the sole issue presented is whether the trial court abused its discretion in its division of the community estate. For the reasons given below, we conclude that the trial court did not abuse its discretion.

## BACKGROUND

After more than thirty years of marriage, Elzbieta Orzechowska ("Elizabeth") petitioned for divorce from her husband Wieslaw Orzechowski ("Wes"). The case proceeded to a bench trial, where the main issues focused on allegations of cruel treatment and fraud on the community.

Regarding the cruel treatment, Elizabeth testified that Wes frequently made disparaging comments about her in front of their peers and children. These comments attacked her appearance ("ugly," "old and wrinkly," "fat pig," "fat cow," "too fat to be respected"); her individual worth ("filth," "stupid," "a nobody"); and her profession as a medical assistant ("low-level job," "someone who wipes handles after patients").

The latter category of comments stemmed from the parties' unequal earning power. Wes worked as an electrical engineer, and in that more highly skilled position, he earned significantly greater wages than Elizabeth. Because of those greater wages, Wes exerted substantial control over the family's finances, and he sometimes exercised that control against Elizabeth's interests. When Elizabeth's relatives were sick in Poland, he refused to give her any of "his money" to travel abroad and see them.

Elizabeth also testified that Wes was deliberately callous on sensitive occasions. For example, after her mother died of a stroke, Elizabeth said that Wes blamed the death on Elizabeth for being a bad person and a bad daughter. And at one holiday dinner, Elizabeth said that Wes made the following toast in front of the entire family: "I wish this is our last Christmas. The next time, next Christmas you spend under the bridge."

The couple's daughter corroborated the allegations of verbal abuse, as did two other members of the couple's close-knit Polish community. In response, Wes testified that Elizabeth and all of her witnesses were liars and that he had never abused his wife.

As for the allegations of fraud, Elizabeth testified that Wes withdrew many thousands of dollars in cash and stuffed the cash in envelopes for friends to carry into Poland, where the cash was destined for his sister. Elizabeth testified that Wes's sister did not need the cash because the sister and her husband were financially stable: they both worked as university professors and they lived in a prestigious district in Warsaw. When Elizabeth confronted Wes about the withdrawals, he said that the money was his and that he could do with it as he pleased.

Elizabeth also produced evidence that Wes maintained control over multiple financial accounts. Wes refused to disclose some of those accounts himself, but Elizabeth discovered them after subpoenaing the financial institutions. Elizabeth examined the transfers in all of the accounts, and she determined that some of the transfers had no legitimate explanation and that hundreds of thousands of dollars were missing from the community estate.

Wes explained in a response to interrogatories that the transfers were completed for "safety purposes" and to avoid having too much money on debit accounts. At trial, he did not elaborate further or explain the missing funds.

The trial court determined that the marriage should be dissolved on the basis of Wes's cruelty. The trial court also determined that Wes committed a fraud on the community by depleting the community estate of nearly $572,000. The trial court reconstituted the community estate with the amount of Wes's fraud, and then awarded that entire amount to Wes as an illusory asset. As for Elizabeth, the trial

court awarded her the marital home and most of the remaining tangible assets that had been discovered.

Under the trial court's division of property, Wes received more than 50% of the reconstituted community estate, with the bulk of his award being the illusory asset for his past fraud. For purposes of calculation only, if this illusory asset were removed from consideration but the division of property were otherwise kept the same, then Wes's share would be reduced to less than 10% of the existing community estate, with the bulk of that share being his vehicle.

## ANALYSIS

The trial court's division of the community estate must be just and right, having due regard for the rights of each spouse. *See* Tex. Fam. Code § 7.001. Although the trial court may consider fault in the dissolution of the marriage, a just and right division should not be punitive against the errant spouse. *See Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980). A just and right division need not be equal either, but it must be equitable. *See Zeptner v. Zeptner*, 111 S.W.3d 727, 740 (Tex. App.—Fort Worth 2003, no pet.).

In making an equitable division, the trial court is afforded wide discretion. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). We presume that the trial court exercised that discretion properly, and we will not disturb the trial court's decision unless we can determine that the trial court clearly abused its discretion. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981).

When the standard of review is abuse of discretion, challenges to the legal and factual sufficiency of the evidence are not independent grounds for reversal, but they are factors to be considered in determining whether the trial court abused its discretion. *See In re Marriage of O'Brien*, 436 S.W.3d 78, 82 (Tex. App.—Houston

4

[14th Dist.] 2014, no pet.). Ultimately, the test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, and the burden of making that showing falls on the party challenging the trial court's division of property. *Id.*

As the challenging party here, Wes argues that he met his burden because, in his view, the trial court's division of property was punitive. Wes largely bases this argument on two points: first, that the finding of cruelty was improper; and second, that the trial court failed to consider other factors that offset the evidence of his fraud. We examine both points in turn.

## I.  Cruelty

Wes does not argue that the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's finding of cruelty. Instead, Wes argues that the trial court's finding was improper as a matter of law because "name-calling does not constitute cruelty." This argument lacks merit because it is contrary to binding precedent. *See McCullough v. McCullough*, 120 Tex. 209, 218, 36 S.W.2d 459, 462 (1931) ("It is the settled law of this state that the cruel treatment provided by our statute as a ground for divorce is not confined to physical violence alone, but may consist of a series of studied and deliberate insults and provocations.").

Even if there had been no evidence of name-calling, there was still other evidence that would support the trial court's finding of cruelty. In addition to the verbal abuse discussed previously, Elizabeth testified that Wes was physically abusive on at least two occasions: one in which he fell into a drunken rage and threw hot tea in her face; and the other in which he forcibly grabbed her wrists, pushed her around the kitchen, and threatened to kill her because she had requested a divorce.

5

Wes suggests in his brief that this evidence of physical abuse could not support a finding of cruelty because Elizabeth never notified the police, but Wes cites to no authority showing that a police report is a prerequisite to such a finding. We are not aware of any such authority either. In fact, our court has articulated a standard for cruelty that makes no mention of police reports: "To constitute cruel treatment, the conduct of the accused party must rise to such a level as to render the couple's living together insupportable." *Henry v. Henry*, 48 S.W.3d 468, 473 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The evidence here amply satisfied that standard.

In one other point, Wes argues that the evidence of abuse was negated by evidence showing that the couple reconciled their differences by vacationing in Mexico. But the record still contained evidence that Wes's cruel treatment continued even after the couple returned from vacation. For example, he told Elizabeth that she deserved the death of her mother. He also openly wished to have no more holidays with Elizabeth and their children, and he expressed his desire to leave Elizabeth penniless and living under a bridge.

There was also evidence that, post-separation, Wes refused to give Elizabeth digital copies of their family photographs, which were stored on his hard drive. He also refused to pay for Elizabeth's hand surgery, and he withheld insurance payments that she needed to replace her own vehicle.

Based on the record as a whole, we cannot say that the trial court acted arbitrarily or unreasonably by making its finding of cruelty. The trial court was permitted to consider that finding in its division of the community estate, so long as the division was not punitive. *See Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (plurality op.).

## II. Fraud

In arguing that the division of property was punitive, Wes focuses primarily on the trial court's finding that he committed a fraud on the community. But once again, Wes does not contend that the trial court abused its discretion because there is legally or factually insufficient evidence to support that finding. Instead, Wes argues that the trial court's ultimate division of property was punitive because the trial court only considered his fraud, to the exclusion of other factors.

The factor that Wes emphasizes most heavily is Elizabeth's alleged fraud on the community. Wes directs us to evidence that Elizabeth invested a substantial amount of money in bonds without his knowledge or consent. There was a dispute at trial as to the exact amount of the investment: Elizabeth testified that the amount was $280,000, whereas Wes claimed that the amount was $560,000. There was no dispute, however, that the investment was made for the benefit of the couple's children, and that the entire investment was lost when the invested company went bankrupt.

The trial court did not make a finding that Elizabeth committed a fraud on the community, and Wes now points to that omission in arguing that the trial court's division was punitive against him alone. This argument lacks merit because the trial court was not required to find that Elizabeth committed a fraud.

This court previously discussed the principles associated with establishing a fraud on the community in *Cantu v. Cantu*, 556 S.W.3d 420 (Tex. App.—Houston [14th Dist.] 2018, no pet.). There, we explained the following:

> Fraud is presumed whenever one spouse disposes of the other spouse's one-half interest in community property without that other spouse's knowledge or consent. This presumption can arise not only by evidence of specific transfers or gifts of community assets outside of the community, but also by evidence that community funds are

7

unaccounted for by the spouse in control of those funds. Once the presumption of fraud arises, the burden shifts to the disposing spouse to prove the fairness of the disposition.

*Id.* at 427.

Even if we assumed for the sake of argument that Wes held a community interest in the invested funds and that Elizabeth made the investment without Wes's knowledge or consent, the trial court could have reasonably found that Elizabeth's disposition of the funds was fair because she invested the funds for the benefit of the children. Indeed, Elizabeth testified that she purchased the bonds because she was concerned that Wes had been draining the children's bank accounts and because Wes had threatened to leave them all penniless. Because the evidence did not establish as a matter of law that Elizabeth had committed a fraud on the community, the trial court had no obligation to factor Elizabeth's investment in its calculation of the reconstituted estate or in its equitable division of property.

In another point, Wes contends that the trial court abused its discretion in its calculation of fraud because the trial court failed to account that Wes had paid for the family's living expenses. But Wes has not supplied any citations to the record in support of this point, which was his burden as the appellant. *See* Tex. App. P. 38.1(i). Nor has he supplied any citations to authority showing that the trial court must credit such expenditures by offsetting the finding of fraud. *Id.* We overrule this point as inadequately briefed.

## III.    Bank Account

Wes asserts one other point in his brief that must be addressed. He claims that the trial court erroneously awarded the same bank account to both spouses in the division of the community estate. This point is not supported by the record. In one section of the decree, the trial court awarded Wes $11,500 in missing funds from the

8

subject bank account as an illusory asset for his fraud on the community. In a separate section of the decree, the trial court awarded Elizabeth the existing balance of the subject bank account—not the funds that were missing from it. Wes has failed to show that the trial court awarded the same property to both spouses.

## CONCLUSION

The final decree of divorce is affirmed.


/s/    Tracy Christopher
       Chief Justice


Panel consists of Chief Justice Christopher and Justices Spain and Wilson.