## TINNON v. TINNON. (No. 9431.)

(Court of Civil Appeals of Texas. Dallas. Nov. 14, 1925.)

1. Divorce ⊜130—Evidence held to show persistent course of ill treatment and disregard of wife's physical and mental health on part of husband.

Evidence held to show a persistent course of studied, vexatious, ill treatment on part of husband towards wife, involving utter disregard for her physical and mental health, sufficient to constitute intolerable treatment within Rev. St. 1925, art. 4629, which would reasonably be expected to impair health of wife.

2. Divorce ⊜51—Husband continuing cruel acts after condonation of former acts by wife thereby revives former acts as grounds for divorce.

Any condonation by wife of husband's cruelty is on implied, if not express, condition of his treating her in future with conjugal kindness, and his breach thereof by further acts of cruelty will revive all such acts that had theretofore been condoned as grounds for divorce.

3. Appeal and error ⊜1177(6)—Cause should be fully developed in order to permit appellate court to render such judgment as court below should have rendered.

The Court of Civil Appeals having, under Rev. St. 1925, art. 1856, authority to render such judgment as court below should have rendered, trial judge should fully develop cause before him to the end that there may be a speedy determination of litigation by appellate court's exercise of such authority.

4. Divorce ⊜127(3)—May be granted on uncorroborated testimony of plaintiff.

A divorce may be granted on the uncorroborated testimony of plaintiff; there being nothing in Rev. St. 1925, arts. 3714, 3715, 4632, or 4633, prohibiting it.

5. Divorce ⊜146—Rendering judgment before case fully developed held error, where plaintiff made out prima facie case.

Where wife suing for divorce made out prima facie case entitling her the relief sought, held, that court erred in proceeding to render judgment for husband before case had been fully developed.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Suit for divorce by Martha L. Tinnon against C. E. Tinnon. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

A. B. Flanary, Thomas G. Burke, and Leslie Jackson, all of Dallas, for appellant.

C. F. Greenwood and J. M. Terrell, both of Dallas, for appellee.

VAUGHAN, J. Appellant instituted this suit on the 27th day of August, 1923, for divorce against her husband, appellee, on the ground of excesses, cruel treatment, and outrages of such a nature as to render their further living together insupportable.

Appellant alleges that she and appellee have one child, Katherine Tinnon, a girl, who is now 6 years of age, and that she desires the care, custody, and control of said child be awarded to her, and, further, that she is the owner, as her separate property, of $5,000, par value, of the capital stock of the Nash-McLarty Motor Company, a corporation of Dallas, Tex.; that said stock was acquired by purchase with her own separate estate, and, although so acquired, said stock was issued jointly by said corporation to appellant and appellee, but that appellant did not intend, by allowing such certificate of stock to remain as jointly issued to appellant and appellee, that appellee should have any interest in said stock, and that in fact he has no interest therein. Appellee answered by way of general exception, a number of special ex-

ceptions, general denial, and plea of condonation, and a special answer as to property rights.

On June 14, 1924, this cause was tried before the court, without a jury, which resulted in judgment denying appellant a divorce and the refusal of the court to adjudicate property rights, and the cost being taxed against appellant. From that judgment this appeal is prosecuted.

Following are the material facts testified to by appellant, the only witness who testified in reference to the facts concerning the grounds on which the dissolution of the bonds of matrimony between appellant and appellee is sought: That appellant and appellee were married January 7, 1915, at Murphysboro, Tenn., where appellant then resided; that appellee is the husband of appellant, and that she had known him about 10 years before their marriage; that, immediately after their marriage, appellee and appellant came to Dallas, Tex., where they now and have since resided; that, about 2 weeks after their marriage, appellee, without cause, became very angry with appellant, and a neighbor intervened to restore peace; that, within a short time after moving to Dallas, appellee, without cause, began to stay away at night from his home, often as late as 3 o'clock in the morning; that this condition increased until he rarely would spend all of a night at home; that it was not necessary for him to be away at night; that a baby, a little girl, was born to them; that the baby became sick with pneumonia, and, while in this condition, appellee left appellant and the baby alone at night without any occasion to be absent; that, soon after their marriage, appellee commenced drinking whisky and to be rough with appellant; that he kept up this course of conduct more or less during the time she continued to live with him; that appellee was very unkind to her and she was afraid of him, afraid he would hurt the baby; that, while they were living in Highland Park, appellee, one winter morning, without cause, became angry with and threw appellant out of bed on the floor; that, while they were living in Oak Cliff, appellee came to appellant's room on the Christmas Day, about 5 o'clock a. m., and called her to get up and fix his breakfast, that he might go hunting; that, because appellant did not get up immediately, he pulled the cover off her and threw her on the floor, and then pulled the baby out of bed and threw her on the floor. Appellant ran with the baby to the bathroom and locked the door, and remained there until 9 o'clock, as she was afraid appellee would come back and kill the baby, as he appeared to be so angry with appellant; that appellant discussed with appellee his staying out at night; that he told her he was playing poker with a bunch of friends and that they always had a little drink; that appellee drank whisky a great deal at night-

time; that he was capable and did earn sufficient means to properly care for and support his family, to wit, $150 a month, but that he refused to contribute but a small part of his earnings to the support of his family, requiring appellant to use for that purpose the $70 per month she received from property owned by her; that on one occasion the baby was sick for about 12 days, and, during that time, appellee remained at home only 2 nights; that about the 1st of July, 1923, appellee again became very angry with appellant and hit her on the head with his fist, causing her to have a headache all day, made her cry and very unhappy; that appellee continued to drink whisky and stay out at night up to the time appellant separated from him on August 22, 1923; that, the last night before they separated, appellee came in at 3 o'clock a. m. intoxicated; that appellant was afraid of him, and that she took the baby into the front room and stayed there the rest of the night; that she was afraid of appellee most of the time; that she was reared in a happy home, under refined and cultured training; that, when she separated from appellee, she weighed only 90 pounds, and was running a temperature; that her normal weight had been anywhere from 98 to 108 pounds; that she was on the verge of a nervous breakdown when she left appellee, caused by the long months of nervous strain she had been through with him; that the acts and conduct of appellee during the period of their married life had everything to do with the condition of her health; that she has not lived with appellee since the 22d day of August, 1923; that she now weighs 103½ pounds and has not had any temperature since; and that she now feels very well and strong.

At this stage of the case appellant informed the trial court that the additional testimony she had to offer bearing upon the grounds for divorce was only in corroboration of her testimony on that issue. Whereupon the trial court arrested further introduction of evidence, and, without according to appellee an opportunity to adduce his evidence in rebuttal on that issue, closed the case and rendered the judgment appealed from on the ground that the facts testified to by her, assuming same to be properly corroborated, were not sufficient to authorize the granting of the divorce. By appropriate assignments of error this ruling is before us for review.

[1] We have carefully considered the course of conduct of appellee towards appellant and the treatment accorded her during the 9 years they lived together preceding their separation, and have reached the conclusion that appellant's testimony reveals a long, persistent course of studied, vexatious and ill treatment on the part of appellee towards appellant, involving not only indifference as to her happiness, but an utter disregard for her physical and mental health. The testi-

mony reveals three brutal assaults upon her person and the most outrageous conduct towards their infant child. Not content with throwing appellant from her bed about daylight on a winter morning, he followed this cruel act with another more cruel, the throwing of their infant child out of the bed on the floor. On another ocasion, when she was leaving the home that should have been to her a haven of rest, in order to secure peace of mind and rest of body from the cruel acts of appellee, we find him assaulting her without any other cause apparent from the evidence than his malicious ill feeling towards her. Appellant's health became seriously impaired. She lost in weight until she was reduced from her normal weight of 108 pounds to 90 pounds on account of the conduct of appellee, which preyed both upon the mind and body of appellant, producing not only a condition rendering their further living together insupportable, but life with appellee unbearable.

It has never been the policy of the law to refuse the granting of a divorce on the ground that the complaining party, by surrendering all the joys of life for the purpose of living with the author of her sorrow, could at least exist, and therefore must continue to suffer and endure the hardships and privations heaped upon her in order to preserve the marital relationship.

Certainly it cannot be doubted that such a course of studied, vexatious, and unwarranted conduct, indifference to one's happiness, provocations, and assaults, is sufficient cause for the dissolution of the bonds of matrimony between the parties to the suit, especially, coupled with the proof that appellant's health was seriously impaired by the treatment thus accorded her. That this constitutes the intolerable treatment contemplated by the provisions of article 4629, Revised Civil Statutes 1925, cannot be questioned.

The question to be determined is whether the acts proved are such as would reasonably be expected to destroy "the happiness of married life, and render its further continuance insupportable." Sheffield v. Sheffield, 3 Tex. 79; Eastman v. Eastman, 75 Tex. 473, 12 S. W. 1107, in which the court said:

"It has generally been held that, when there is no physical violence, the cruel conduct, in order to warrant a divorce, must be such as will produce a degree of mental distress which threatens at least to impair the health of the injured party."

In the instant case the proof establishes that the cruel conduct alleged and testified to not only threatened, but did impair the health of appellant. Bahn v. Bahn, 62 Tex. 518, 50 Am. Rep. 539. In that case the court, in discussing the above statutory provision as to the measure of relief comprehended thereby, used the following language:

"In regard to these statutory causes for divorce, in determining whether or not they are sufficient in the particular case, the social condition of the parties, their mode of life, and all the attending circumstances, should enter into the consideration of the question. * * * This arises from the fact that the law seeks to adjust itself to the varied conditions of human society, and render its operations practically just to all."

In the case of Wright v. Wright, 6 Tex. 3, the court, in discussing the effect of the same statute, held:

"The statute declares that the marriage may be dissolved, if the husband or wife be guilty of such excesses, cruel treatment, or outrages, towards the other, as to render their living together insupportable. To constitute an excess, cruelty, or outrage, within the meaning of the statute, it is not necessary that an indignity, or that violence, be offered to the person of the wife. If the act be an outrage upon her feelings, it is immaterial whether it be inflicted immediately upon herself, or upon third persons, so that it be inconsistent with the matrimonial relation and its duties, obligations, and affections." Huilker v. Huilker, 64 Tex. 1.

[2] Appellee contends that appellant, by continuing to live with him after the several acts of personal violence committed upon her, and the other acts of cruelty as testified to by her, condoned these offenses, and that, as appellee was not guilty of any other acts or conduct that would justify the granting of a divorce, the court therefore did not err in refusing same.

It is true that appellant did condone said acts and conduct of appellee, and that he was not thereafter guilty of acts or conduct which, within themselves, amounted to excesses, cruel treatment, or outrages towards the appellant of such a nature as to render their living together insupportable, however, he was guilty of such conduct immediately preceding appellant's separation from him sufficient to revive, and which did revive, all of the acts and conduct of appellee that had theretofore been condoned, which thereby became grounds for the granting of the divorce sought. This, upon the ground that any condonation by appellant of appellee's cruelty was on the implied, if not express, condition of his treating her in the future with conjugal kindness, and that the breach of this condition was sufficient to revive her right to maintain the suit based upon the original offenses. His staying out unnecessarily late at night, coming in drunk, was sufficient to indicate to appellant that her patience had ceased to be of any virtue, and that she had nothing on which to base further hope of reformation on the part of appellee, but, to the contrary, could confidently expect not only the ultimate repetition of his outrageous treatment of and conduct towards her, but that same would increase in violence with the passing years. Robbins

v. Robbins, 100 Mass. 150, 97 Am. Dec. 91; Nogees v. Nogees, 7 Tex. 538, 58 Am. Dec. 78, in which the court, in passing upon the identical question, said:

"From these doctrines, it appears that condonation operates as a bar only where there is no further ill treatment, where the offending party discharges his duty according to the marriage obligations, or where the injured party is treated with that kindness and affection due to the conjugal relation. If there be fresh cruelty or outrage, the former acts will be revived, and the impediment raised by the reconciliation removed."

See Farnham v. Farnham, 73 Ill. 497, from which we quote as follows: "Condonation" is "forgiveness, upon condition the injury shall not be repeated, and is dependent upon future good usage and conjugal kindness"—as applicable to this case.

In the case of Bingham v. Bingham (Tex. Civ. App.) 149 S. W. 214, it was said:

"Of course, condonation carries with it the stipulation that the injured party is to be treated with conjugal kindness and consideration, and, if this is not accorded, the former act of cruelty is revived, provided the last act is not produced by the offensive conduct of the party seeking the divorce."

To the same effect is the holding in the case of Parker v. Parker (Tex. Civ. App.) 204 S. W. 493, the court in that case holding:

"Condonation is not absolute, but is based upon the repentance of the guilty party, and conditioned upon nonrepetition of the offense and future kind treatment; a violation of it in either respect reviving the original offense."

We therefore hold that the condonation of the acts and conduct of appellee by appellant were avoided by his subsequent conduct just preceding the separation, and all of the previous acts alleged as grounds for divorce were revived.

[3] If the case had been fully developed on the three issues presented by the pleadings, which would have been the case if appellee had introduced his evidence thereon, this court, instead of reversing and remanding the cause, would have proceeded, under the authority of article 1856, Revised Civil Statutes 1925, to render such judgment as the court below should have rendered.

In this connection we think it advisable to suggest to trial judges the necessity of keeping before them the importance of having a cause fully developed, to the end that there may be a speedy determination of litigation through the due observation of and enforcement by the Courts of Civil Appeals of the wholesome provisions of article 1856, supra.

[4] In view of another trial of this cause, we do not think it amiss to make the following observation in reference to what seems to be now the common idea—that a divorce should not be granted upon the uncorroborated testimony of the plaintiff. This idea is based upon a mere general rule of practice and not upon a legislative enactment. Without limitation, article 3714, Revised Civil Statutes 1925, provides that no person shall be incompetent to testify on account of color, nor because he is a party to a suit or proceeding, or interested in the issue tried. And, by article 3715, Id., the husband or wife of a party to the suit or proceeding, or who is interested in the issue to be tried, is declared not to be incompetent to testify therein, except as to confidential communications between such husband and wife. The above are general provisions, applicable alike to the qualification of witnesses to testify in all civil cases, while article 4633, c. 4, Id., specially applicable to the admission of testimony on the part of husband or wife in divorce cases, provides:

"In all such suits and proceedings the husband and wife shall be competent witnesses for and against each other, but neither party shall be compelled to testify as to any matter that will criminate himself or herself; and where the husband or wife testifies, the court or jury trying the case shall determine the credibility of such witness and the weight to be given such testimony; but no divorce shall be granted upon the evidence of either husband or wife, if there be any collusion between them."

This statute is peculiarly applicable to this character of proceedings, and, without any limitation, the parties to a divorce suit are permitted to testify, subject to their credibility as a witness and the weight to be given their testimony to be determined by the court or jury trying the case, just as in any other proceeding other than a divorce suit. The provision that no divorce shall be granted upon the evidence of either husband or wife if there be any collusion between them is to prevent the obtaining of a divorce by consent of the parties on grounds that do not in fact exist, and the perpetrating of a fraud upon the court, but, is not in itself a limitation upon testimony of either party without any collusion between them.

The following provision of article 4632, Id.:

"But the decree of the court shall be rendered upon full and satisfactory evidence, upon the judgment of the court affirming the material facts alleged in the petition,"

—is not of itself a limitation upon the legal effect that should be given the testimony of the parties to a divorce suit as contradistinguished from some other suit, but is simply a requirement that the court trying the cause shall only decree a divorce where the grounds alleged therefor shall have been established by full and satisfactory evidence and does not inhibit the trial court from accepting the testimony of either one of the interested parties as measuring up to the requirements of said statutory provision for

the purpose of granting the decree of divorce, although uncorroborated.

In discussing this question, the Supreme Court of Massachusetts, in Robbin v. Robbin, supra, announced the following sane and effective rule:

"When other evidence can be had, it is not ordinarily safe or fit to rely upon the testimony of the party only. But sometimes no other evidence exists, or can be obtained. The parties· are not competent witnesses by statute, and there is no law to prevent the finding of a fact upon the testimony of a party whose credibility and good faith are satisfactorily established."

As to the issues involving property' rights and the custody of the minor child of the parties, same are not before us, as the trial court did not in any respect pass thereon; therefore we make no comment in reference to those issues.

[5] Assuming that, if the case had been fully developed, the facts as testified to by appellant would have been established, we are of the opinion that the grounds on which appellant sought the annulment of her marriage with appellee would have been proven. We therefore conclude that the trial court erred in proceeding to render judgment before the case had been fully developed, appellant having made out a prima facie case entitling her to the relief sought; and therefore the judgment of the court below should be reversed, and the cause remanded for further proceedings not inconsistent with this opinion, and it is so ordered.

Reversed and remanded.