### BARTA v. BARTA.   (No. 6970.)

(Court of Civil Appeals of Texas. Austin. March 31, 1926.)

1. **Divorce ⬥99—Where condonation by wife of husband's acts of cruelty is relied on as defense in divorce suit, facts on which it is based should be specially pleaded.**

Where condonation by wife of husband's acts of cruelty is relied on as defense in divorce suit, facts on which it is based should be specially pleaded.

2. **Divorce ⬥135—Evidence held to show that wife did not condone husband's acts of cruelty, though she lived at same house and cooked his meals.**

Evidence *held* to show that wife did not condone husband's acts of cruelty, relied on for divorce, though she afterward lived at same house and cooked his meals.

3. **Divorce ⬥51—As respects revival of condoned offense, wife's condonation of husband's cruelty exists only so long as she is treated with kindness and consideration or until she has reasonable apprehension of further violence, unless her offensive conduct is cause of subsequent acts (Rev. St. 1911, art. 4635).**

Wife's condonation of husband's acts of cruelty exists only so long as she is treated with kindness and consideration or until she has reasonable apprehension of further violence, unless her offensive conduct is cause of subsequent acts; rule being different than in case of statutory condonation of adultery, connivance, or collusion under Rev. St. 1911, art. 4635.

Appeal from District Court, Fayette County; M. C. Jeffrey, Judge.

Suit by Katrena P. Barta against Vinc V. Barta. From a judgment dismissing the suit, plaintiff appeals. Reversed and remanded.

C. E. Nesrsta, of San Antonio, for appellant.

C. D. Krause, of La Grange, for appellee.

BLAIR, J. Appellant sued appellee for a divorce, alleging that he was a man of violent and ungovernable temper, inhuman and tyrannical; that he cursed and abused her and threatened to kill her; that on specific occasions mentioned he struck and beat her to the extent that she became unconscious; and that his conduct and treatment of her was unbearable and rendered their further living together insupportable. Appellee answered by a demurrer, a de-

nial, and, among other things, pleaded that "plaintiff has condoned all the acts and conduct alleged by her."

The cause was tried to the court without a jury, and at the conclusion of appellant's direct testimony, the court concluded therefrom that she had condoned the acts of cruelty relied upon for a divorce, denied her petition, and dismissed the suit. The sole question on this appeal is whether there is any evidence to support the court's conclusion and judgment. Our opinion is that it does not do so.

[1] Appellee pleaded no facts upon which he based his allegation of condonation. Condonation has been generally held to be an affirmative or special defense, requiring the facts upon which it is based to be specially pleaded. Wright v. Wright, 6 Tex. 3; Nogees v. Nogees, 7 Tex. 539, 58 Am. Dec. 78. However, in the case of Smith v. Smith (Tex. Civ. App.) 218 S. W. 602, it was held that, although the rules of pleading required the defenses of connivance and collusion to be specially pleaded, courts are justified in refusing a divorce when the evidence shows them to exist upon the ground that the public is a party to a divorce. But, be that as it may, we think the better practice requires these matters to be specially pleaded where it is relied upon as a defense. A plaintiff in a divorce suit is certainly entitled to be informed as to the facts the defendant bases an allegation of condonation upon before the trial, in order to be prepared to meet the issue with proof. In passing, we make mention of this matter so that appellee may amend in this particular, if he desires to do so in the event of another trial of this case.

[2] The testimony shows appellee guilty of a course of cruel, brutal, tyrannical, and inhuman conduct toward appellant, commenced soon after their marriage, when she was some 13 or 14 years of age, and continuing over a period of 25 years. If her testimony is true, she established a right to a divorce beyond question. His treatment of their children was cruel and unnatural. He used vulgar and obscene language toward his wife. On several occasions he beat her into a state of unconsciousness, inflicting injuries requiring medical attention. He threatened to kill her and to run her and the children away from their home. Some 3 years before the filing of this suit she sued him for a divorce, but, upon his promise to do better and treat her more kindly, she withdrew the suit. After that he became "worse" than before, and she filed this suit. Since the filing of this suit he has threatened to kill her and has struck her. The trial court concluded that she had condoned these cruelties upon the following testimony:

"We live on 156 acres. There is only one house there; we are living in it. By 'we' I mean Barta, myself, and our children. Barta sleeps there; he slept there last night; he eats there. I prepare those meals. We sit together at the same table. We sat together at breakfast this morning. It is not a fact that my husband and I have been living all the time and up to this morning the same as we have all these years, and conducted ourselves as husband and wife. I have to make up his bed, but he wouldn't even let me do that; he refuses to let me clean up. He sleeps in another room. That has been his habit sleeping in a different room from me for years. We do not sit down and converse and talk about things like we have in the past; he has nothing to say to me; he is all to himself. We eat together at the same table, but he wouldn't speak to us, and will sometimes run us away from the table, and we have to run off. I can't live with my husband any more; I have got enough of this suffering. I have been staying with him until this morning, because I have no place to go. My brothers are far away, and I have no place to stay. I am afraid of him. I am afraid that he will kill me, because he has threatened me to do it. He has been threatening me from the beginning, but it was not as bad at first as it is now; it is getting worse and worse. Since the suit was filed, we have not slept together in the same bed. For many years we have slept in separate beds. He slept on a separate bed in a room to himself because he wanted fresh air, and I wanted my room closed up; I suffer from rheumatism, and wanted to sleep in a closed room. We continued to occupy the same beds and sleep in the same manner as we had for years before this suit was filed. He never really loved me, and I slept separately. I have always been loving and kind to him. The place where living now is the same place I have lived at since I was a little girl, 9 years old. I have no place in Fayette county to go. My brothers are in West, Tex. Three years ago I asked for divorce, and he begged me, and I took it back, and he promised to be better, but he is not better, but worse. This suit was filed in February this year. He has threatened several times since then to kill me; he hit me, but didn't have any arms or weapons."

[3] It is evident that the learned trial judge applied the strict rules applicable to statutory condonation of adultery, connivance, or collusion (article 4635, R. S. 1911), which create a greater bar, and are considered of much greater effect than condonation by a wife of repeated acts of cruelty committed by a husband. With respect to this, the Supreme Court held in the case of Wright v. Wright, supra, that:

" * * * 'But the forbearance of the wife, and her repeated forgiveness of personal injury, in hopes of softening the heart and temper of her husband, and under the feelings of a mother anxious to continue in the care and nurture of her children, are even praiseworthy, and create but a slight bar, removed by the reasonable apprehension of further violence.' See, also, 3 Eccl. R., 390; Shelford, 436, 445. Condonation is held to be less stringent on the wife, than on the husband. She is more sub potestate, more inops consilii. She may entertain more hopes of the recovery and reform of her husband, etc. Shelford, 447; vide Ferrers v. Ferrers, 3 Eccl. R. 334."

While the doctrine of condonation applies as well to acts of cruelty as to the statutory grounds of adultery, connivance, or collusion, still its application is conditional and limited as follows:

First. It is condoned until the particular act is repeated, and, when repeated, the former acts are thereby revived, provided the last act is not produced by the offensive conduct of the party seeking the divorce.

Second. The injured party is to be treated with conjugal kindness and consideration in the future, and, if not accorded this, the former acts of cruelty are revived.

Third. Where living in the same house is relied upon by the husband as condonation, the proof should show connubial cohabitation so as to operate more completely as a forgiveness of the cruel acts complained of.

Fourth. Condonation or reconcilation by a wife of repeated acts of cruelty by a husband "create' but a slight bar, removed by the reasonable apprehension of further violence."

In addition to the authorities cited, see, also, Bingham v. Bingham (Tex. Civ. App.) 149 S. W. 218; Knight v. Knight (Tex. Civ. App.) 220 S. W. 609.

We submit that it is evident that the trial judge took none of these conditions and limitations into consideration in this case, and there is no evidence that appellant had breached any of them whereby she would be deprived of their benefit. There is no testimony showing offensive conduct on the part of appellant which would authorize appellee to strike her, and this he has done both before and after the filing of this suit. The fact that she wanted money to buy clothing for herself and children, and about which many of their differences arose, would not justify the act. The fact that he took the egg money, for which she called him a thief, would not in any way justify his striking her. The fact that she wanted to have the money coming from her separate estate, in which the community was also interested to an extent, would not justify him in striking her and threatening to kill her and throw her over the fence. The fact that she took the part of her children in their difficulties with their father would not justify him in striking her and trying to run them off the place. The only fact or circumstance that in any way tends to show condonation is their continuing to live in the same house, and that she continued to cook and serve his meals, and we think this wholly insufficient.

In the case of Wright v. Wright, supra, the court held:

"There was no proof of conjugal intercourse between the parties. Their living in the same house raises a presumption of matrimonial cohabitation; but this may be repelled by circumstances. In this case, a witness testifies that they had not slept together for years;

and this raises a counter presumption that during this temporary reconciliation they were not occupants of the same bed. A return to live in the same house with a husband, but without connubial cohabitation, does not operate so complete a forgiveness, as where there was a renewal of the conjugal society or embraces. 3 Eccl. R. 342; 4 Id. 290; Shelford, 251."

Appellant testified that she had no other place to go with her children. She was uneducated and unlettered, and could not so much as speak the English language. It was as much her home and that of her children as it was the home of the husband, whose conduct in that home had become unbearable. There is no evidence that they cohabitated, but all the evidence is to the contrary. The evidence showed that of necessity she stayed there and suffered the ills and wrongs of her husband rather than fly to others she knew not of. It also shows that her forbearance was to a great extent in the interest of her children, whom she alone was in no manner equipped to support, and in this her conduct is praiseworthy. So we are of the opinion that the cause should be reversed and remanded, the suit reinstated, and, in the event of another trial, appellant should be given the benefit of the rules of law herein declared.

Reversed and remanded.