Nina RIPPETEAU, Appellant,

v.

Jerry RIPPETEAU, Appellee.

No. 10343.

Court of Civil Appeals of Texas.

Austin.

Jan. 11, 1956.

Rehearing Denied Feb. 1, 1956.

Archer & Archer, Austin, for appellant.

Looney, Clark & Moorhead, Donald S. Thomas, Austin, for appellee.

HUGHES, Justice.

Appellant, Mrs. Nina Rippeteau, sued her husband, Jerry Rippeteau, for divorce and for custody of their three minor children.

A nonjury trial resulted in a judgment denying appellant any relief.

Findings of fact and conclusions of law were filed by the trial court.

Appellee has filed no brief and made no oral argument and we are authorized to accept as correct statements made in appellant's brief as to the facts or the record. Rule 419, T.R.C.P. We have, however, read the entire 215 page Statement of Facts.

Appellant has twenty one points in her brief attacking the findings and conclusions of the trial court as being unsupported by any evidence or as being against the overwhelming preponderance of the evidence.

The trial court found that appellee was not guilty of cruel treatment of appellant during the three year period immediately prior to the date this suit was filed and that while he had been guilty of cruel treatment prior to such time such cruel treatment was not of such nature as to render their living together as husband and wife insupportable.

The court further found that within the three year period since appellee had cruelly treated appellant the parties had "lived together harmoniously as husband and wife."

Notwithstanding this finding the court further found that within the one year period immediately prior to the filing of this suit that appellant had been guilty of cruel treatment of her husband of such nature as to entitle him to a divorce, but that appellee had condoned such acts of cruelty.

Divorce was denied by the trial court on the grounds that the evidence was insufficient and if sufficient appellant had condoned her cruel treatment and was, herself, guilty of recrimination.

The parties were married in 1936. They separated in November, 1954. They have three minor children, two girls ages 17 and 13 and a boy 6.

Regarding the occasion of their separation appellant testified:

"A. He had called the night before and said that he was coming home and he was in a very foul mood over the telephone. So I met him at the air port and when he got off the plane, he was scowling in a very hateful attitude and we got in the car and started back to the house and he started in with cynical remarks and hateful conversation, and it was a pattern that I had put up with for several years, and on the way back I made up my mind that I could not go through with it any more. I knew that I could not put up with that for another week-end like that, so when we got to the house instead of going in, I walked away.

"I have tried to get away from him before on such occasions and he has bodily held me in the house to where I could not get away. So I walked up the street and he followed me and physically tried to force me back into the car a number of times, until I had gotten a good ways down Lamar. I saw some men standing on a porch a short distance from me, the last time he tried to drag me into the car, and I stopped and asked them if they would call me a cab and he disappeared then and did not bother me any more at that time.

"Q. Were these acts of such nature as to render your marriage insupportable? A. Definitely they were.

"Q. Could you ever live with him again whether or not the Court granted a divorce? A. No, sir, never.

"Q. Would you constantly be in fear of your life? A. Yes, sir."

In view of appellee's apparent lack of interest in this appeal we are most reluctant to set out in detail the vicissitudes of this marriage. We will generalize for the most part and if details are requested we will write further upon rehearing.

The first five years the parties lived in Kansas City. They then moved to Corpus Christi for about ten years residence, then to Fort Worth for about two years, Bay City about six months and finally to Austin in 1952.

Appellee admitted that he was a jealous, high tempered man and that he had on many cases accused his wife of infidelity. This caused many scenes.

There is not in the record even a breath of suspicion that Mrs. Rippeteau was unfaithful to her husband.

In Fort Worth in 1951 appellee struck his wife causing a gash over her eye which required four stitches to close. Appellee expressed remorse for this act but testified that he felt that his wife had never forgiven him for it.

His reason for striking her was that she cursed him but this was denied by appellant.

Twice during the marriage appellant felt compelled to leave her home and live with her relatives and go to work.

Both parties drank to excess. The evidence shows that this drinking was encouraged by appellee and that when appellant was away from him she did not drink. She had not indulged at all for more than 18 months prior to the trial.

Appellant's only complaint of his wife since living in Austin is that she has a woman friend with whom she exchanges visits and that she does not stay home enough.

Appellee's business requires him to be out of town except on week ends and his wife does visit in the evenings. There is no evidence that the children were neglected by their mother or that they were not properly chaperoned during her absence.

■ We do not believe such conduct on the part of the wife is sufficient to constitute grounds for divorce for her husband nor to constitute recrimination in bar of her suit.

No home should be a prison. With the husband gone five nights a week it was but natural that appellee should seek proper companionship outside the home. Especially is this true when the children were of the ages shown.

Mrs. Rippeteau has testified repeatedly and emphatically that she can never again live with appellee as her husband because of the accumulated abuse which she has suffered at his hands.

■ It is our opinion that appellee's conduct upon the final separation of the parties erased any condonation of his previous misconduct and revived such abuses for the purpose of becoming grounds for divorce. Barta v. Barta, Tex.Civ.App., Austin, 283 S.W. 201, Redwine v. Redwine, Tex.Civ. App. Amarillo, 198 S.W.2d 472.

■ We believe the findings of the trial court which appellant attacks are so against the overwhelming preponderance of the evidence as to be clearly wrong.

The judgment below is reversed and this cause is remanded.

## On Motion for Rehearing

Appellee has filed a motion for rehearing in which he says:

"In its opinion, this Court has held that on the date of final separation of the parties, Appellee was guilty of misconduct that was sufficient to erase any condonation by Appellant of prior misconduct. The testimony upon which this holding was made is set out in the opinion, and is to be found in the statement of facts at pages 4 and 5. Appellee readily admits that if such testimony is believed and accepted as true the conclusion drawn from it by this Court is accurate, and supported by the authorities cited. Barta v. Barta [Tex. Civ.App.], 283 S.W. 201, Austin; Redwine v. Redwine [Tex.Civ.App.], 198 S.W.2d 472, Amarillo.

"This evidence is uncorroborated, however, and is completely unsupported except by the testimony of Appellant. The trial judge did not accept such testimony as credible and found the facts to the contrary."

■ Appellee sat in the courtroom and heard appellant testify. He did not deny her version of the separation. This raises a strong inference that he could not deny it. Furthermore appellee partially verified the incident by this testimony:

"Q. You heard her testify this morning you accused her of going out with other men when you would come in from these trips; just start in the minute you walked in doing that. Do you deny doing that? A. Yes.

"Q. You didn't do that? A. No, I would not say I started in accusing her the minute I walked in the door.

"Q. But the course of the week-end, you did accuse her? A. At various times, I probably have. I will not say every week-end, as explained here. I don't believe that and she doesn't either.

"Q. But several times that is so? A. That's right.

"Q. And you did have a jealous nature, as you say, and you have demonstrated that in the form of a temper; is that right? A. I have a temper, I guess, just like you or anyone else has one.

"Q. And on those occasions you have said pretty mean things about her and to her; isn't that right? A. Yes, I am not going to deny that I have said things that I wish I had not. Yes.

\* \* \* \* \* \*

"Q. Nevertheless, on this occasion when she left you, you did immediately start asking her why she was not home the night before when you called; is that right? A. Yes, I did.

"Q. You didn't give her a chance to explain either, did you? A. I don't recall whether I did or not.

"Q. And that conversation kept up like that until you got home; is that right? A. I don't have too good a memory of what went on. I remember when we got to the house and she left, I was so astounded I didn't know what was going on.

"Q. She walked on right down the street? A. That's right."

We adhere to our ruling that the finding of the trial court in this regard is against the weight of the evidence.

Appellee makes the following statement in his argument in support of this motion:

"After considering the opinion of this Court and the result of its deci-sion, appellee has arrived at the conclusion that they constitute a reflection on either the good faith or the ability of the trial judge."

■ We have final fact jurisdiction conferred by Section 6, Art. 5, of the Constitution, Vernon's Ann.St. In exercising this jurisdiction it is our duty to:

"consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. See cases cited, supra. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict." In re King's Estate (King v. King), 150 Tex. 662, 244 S.W.2d 660, 661.

This we have done, nothing less nothing more. Unless we abandon our jurisdiction in this respect we could not do less than we have done. We feel certain that the trial court does not share in appellee's unfounded conclusion.

Appellee has an alternative prayer in which he asks that we render judgment of divorce for appellant and reverse the cause as to other issues.

■ Appellee states that on the trial he "refrained from making any attack on his wife and her faults and shortcomings, other than those that were immediately involved in their domestic difficulty."

We construe this as intimating the case was not fully developed. A remand is proper under such circumstances.

The motion is overruled.