Ruth DICKEY, Appellant,

v.

W. M. DICKEY, Appellee.

No. 6847.

Court of Civil Appeals of Texas.

Texarkana.

May 3, 1956.

Stone & Stone, Jacksonville, Julius F. Franki, Austin, for appellant.

William F. Fadler, Washington, D. C., for appellee.

HALL, Chief Justice.

This is an action for divorce instituted by Capt. W. M. Dickey against Ruth Dickey in the District Court of Cherokee County, Texas, alleging as grounds cruel treatment. Trial was to the court without a jury and resulted in judgment granting a divorce to appellee, awarding the custody of their two minor sons, ages 17 and 14, to appellant and providing for $150 per month as support for each of said minors. The judgment also made disposition of the community personal property belonging to the parties.

Appellant brings forward five points, the first two of which are: (1) Asserting that there was no evidence of "excessive, cruel treatment or outrages," on the part of defendant (appellant) such as contemplated by Article 4629, subdiv. (1), R.S., Vernon's Ann.Civ.St. art. 4629(1); and (2) that the evidence introduced was not full and satisfactory as required by Article 4632, R.S., Vernon's Ann.Civ.St. art. 4632, as would warrant a divorce under Article 4629, subdiv. (1), R.S.

The facts reveal that appellee, Capt. W. M. Dickey is a member of the U. S. Armed Forces, Navy Dep't, and has been since about 1930, the date of his graduation from the U. S. Naval Academy. During his period of service in the Navy he spent much of his time on warships in the Asiatic theater during World War II. For some months he was based at Guam, and from there was assigned to Saipan. These assignments were after World War II closed. He was also based at Honolulu, Seattle, San Diego and Pensacola. These assignments, or some of them, were during World

War II. After his assignment to Saipan he was sent to Lawrence, Kansas, as an instructor of the R.O.T.C. Unit located at the University of Kansas.

Appellant and appellee were married on August 29, 1937, in Oakland, California. Appellant and appellee lived for a time on Guam Island and also at Saipan, but appellant returned to the States from Saipan some months ahead of him to her home at Oakland, California. At most of the bases where appellee was located, either overseas or in the United States, his wife and children lived with him a portion of the time. It seems that appellant called California her home. Appellee and appellant went to Lawrence, Kansas, sometime in 1951, where they lived until June 11, 1952, at which time they separated. While living in Lawrence, they purchased a home. When they separated they sold the home and applied the funds derived from the sale on another home appellant bought in California. When they separated in Kansas, appellant took with her certain household goods, including their '51 Packard automobile, a valuable fur coat recently purchased, and a piano. Since the separation in Lawrence, Kansas, they have not lived together.

Appellee is now situated in Washington, D. C. He was born in Cherokee County, Texas, near the town of Rusk, which community he claims as his home and has so claimed it as such through the years. When appellee and appellant separated, it was agreed that appellant would file suit for divorce in California. This she did sometime later, but the case has never been called for trial; in fact, no process has ever been served upon appellee. This suit was filed by appellee in the District Court of Cherokee County, September 14, 1954. The trial of the case was begun on March 22, 1955, and judgment was filed March 25, 1955.

Appellee in his brief has summarized his testimony with respect to acts and conduct of appellant toward him during the time they lived together as husband and wife as follows:

"(1) That Defendant interfered with Captain Dickey's parental control and discipline of his children;

(2) That Plaintiff was denied a voice in his own household: 'I had nothing to say in my own house, that is what it comes to;'

(3) That defendant threatened to leave Plaintiff while his orders required him to remain overseas;

(4) That defendant referred to Plaintiff as the meanest man she ever knew; and that she detested him;

(5) That they 'couldn't stay together without getting into arguments';

(6) That 'It was misery rather than pleasure when we were together, that is what it amounted to and it had come to the point where separation under any circumstance would be best;'

(7) That because of Plaintiff's laxness in disciplining the boys, they challenged their father;

(8) That Defendant told Plaintiff on repeated occasions that she hated him and couldn't continue to live with him;

(9) That it was 'misery' to Plaintiff to be around her;

(10) That the stress and strain were a 'gradual' thing culminating in 'misery' to Plaintiff;

(11) That she was 'glad' and agreed that divorce was the only solution."

Appellant was not present at the trial and no testimony was offered in her behalf. Appellee was present and testified rather fully in his own behalf. The above summary of the testimony by appellee is borne out substantially by the facts in this case.

The serious question raised here is whether the testimony meets the standard required by the statutes of this state in cases of this character, and in our opinion this is the controlling issue in the case.

Article 4629, sec. (1), R.C.S. provides, "Where either party is guilty of excesses, cruel treatment or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable" a divorce may be granted. Our Supreme Court in McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459, 463, in answer to certified question from a Court of Civil Appeals, 20 S.W.2d 224, states: "We therefore hold that the excesses, cruel treatment, or outrages provided in our statutes as grounds for divorce are sufficient if they are of such a nature as to render further living together insupportable, and that without regard to whether such treatment is of such a nature as to threaten the impairment of the physical health of the wife. Of course the sacredness of the marriage relation should be kept in view, and divorces should not be granted on trivial matters or disagreements." In the old case of Eatman v. Eatman, 75 Tex. 473, 12 S.W. 1107, 1108, opinion by Justice Gaines, it is said: "Every case of this character (under this phase of the statute) must be determined by its own peculiar facts. It is impossible to lay down any precise rule by which to decide, under a given state of facts, whether legal cruelty does or does not exist."

It is true that the evidence must not only be full and satisfactory to the trial court, but must be full and satisfactory to the appellate court as well, yet we can not lose sight of the fact that the personal presence of the parties before the trial judge, and his opportunity to observe their demeanor and to pass upon their credibility is a vantage in his favor not available to us in passing upon the record, and one we are not at liberty to arbitrarily disregard. See Blake v. Blake, Tex.Civ.App., 263 S.W. 1075.

■ With the authorities quoted above in view, we have examined very closely the record in this case and have analyzed it from every viewpoint. We find no evidence in the record that the acts and conduct of appellant toward appellee during their married life in any wise injured his health. It is true, the acts and conduct of appellant as related by appellee were not conducive to a happy home, but from a reading of the numerous cases cited by both parties herein, it appears that family quarrels, ugly words spoken by one spouse toward the other, such as appear in this record, and even physical violence, is not sufficient under this statute to warrant a divorce. To name a few: McNabb v. McNabb, Tex.Civ.App., 207 S.W. 129; Cantwell v. Cantwell, Tex.Civ.App., 217 S.W. 2d 450; Green v. Green, Tex.Civ.App., 268 S.W.2d 237; Bippus v. Bippus, Tex. Civ.App., 246 S.W.2d 502; Robinson v. Robinson, Tex.Civ.App., 235 S.W.2d 228. Appellee merely hints that appellant's conduct was brought about through no fault of his by stating that he thought he was reasonable about the matter. From appellee's own statement, the final separation was caused when his sons "challenged" him, which in his opinion was the fault of appellant. There is no explanation of what he meant by this statement—whether they exhibited physical force against him in combat or refused to obey his commands. The record also reflects that at the time of the final separation, appellee had received orders to return to Port Lyautey, in French Morocco, North Africa. We are not advised what appellant's reaction was to this order from the U. S. Navy. Whether she objected to going with him to this far-off place we do not know.

■ We have reached the conclusion that the testimony in this record taken at its strongest is not of that clear and convincing nature as to warrant a divorce. We say this with all respect to the decision of the learned trial judge. Marriage is a sacred institution among us, ordained of God, and should not be lightly considered, and the testimony upon which a judgment dissolving the marital relation rests must be clear and convincing. Many more cases setting forth different fact situations in divorce cases could be cited here, but, as stated above in Eatman v. Eatman, supra, no precise rule can be evolved by which all of this character of cases can be determined. Each case depends upon its own peculiar facts. These points are sustained.

We have carefully examined all other points brought forward by appellant and have concluded that they are without merit and are respectfully overruled.

Judgment of the trial court is reversed and the cause remanded.