Jack F. RITTER, Jr., Appellant,

v.

Madeline Moore RITTER, Appellee.

No. 11331.

Court of Civil Appeals of Texas.

Austin.

Oct. 27, 1965.

Rehearing Denied Nov. 17, 1965.

Sneed & Vine, J. P. Darrouzet, Austin, for appellant.

Graves, Dougherty, Gee & Hearon, Thomas G. Gee, Austin, for appellee.

HUGHES, Justice.

This is a divorce suit. Madeline Moore Ritter, appellee, sued her husband Jack F. Ritter, for divorce and custody of their two minor daughters, and for a monthly allowance for their support, for attorney's fees and costs. The ground for divorce was cruel treatment, alleged in general terms. Apppellant answered by a general denial. Trial was non-jury, resulting in a judgment as prayed for by appellee, and, in addition, partitioning their common property.

Appellant presents two points, the first being that the Court erred in granting a divorce because the evidence to support such decree was not full and satisfactory as required by Art. 4632, Vernon's Ann. Tex.St., and the second point being that any cruel treatment which he may have been guilty of was condoned by his wife.

We overrule both points.

The parties were married in June 1955. They lived together until their separation on October 31, 1964. They have two daughters, Diane seven years, Susan four years. They are well educated persons. Appellant is a lawyer practicing in Travis County. His legal education was acquired after the marriage. Appellee is a college graduate, holds a teacher's certificate and has been employed as a research assistant at the University of Texas while working towards a higher degree.

The parties' problems seemed to have stemmed principally from financial difficulties. Mr. Ritter testified, "We had always been very tight; she always wanted to go to school and I wanted to go to school and we never had a financially comfortable situation. * * * Our budget has never fit."

Appellant has engaged in unsuccessful political campaigns and this resulted, as he states, going "deeper in debt than we anticipated."

These political campaigns also resulted in bickerings between the parties, mostly because appellant did not believe that his wife did all she should have done in his behalf and that, in a sense at least, she was responsible for his defeats.

The atmosphere in the home is best described by the older daughter in these words which were attributed to her: "My daddy fusses at my mother and yells at her every morning and every evening so loud that it sounds like all the people in the world are in one room yelling * * * And sometimes my daddy chases my mother all over the house, and when he catches her, my little sister and I have to run in another room so we won't see."

Appellant called his wife vile, unprintable names, and in the presence of the children.

The record discloses that appellant inflicted physical violence on his wife on four separate occasions, two in 1957 and in September 1963 and one in April 1964. None of the incidents was of a serious nature, from a physical point of view. The first two were pushings against the wall and slight blows on the side of the face. The latter two were "spankings." We quote appellee's description of the April 1964, chastisement: "Then in April the argument was that—we continued this thing about his career had been ruined and we were overspending in money, and all of this, and it was on the back porch of our house, and it was Sunday afternoon, and our children were there on that back porch, and he took me over his knee and he hit me and he likes to say, 'No, this isn't a spanking,' but the blows were so hard that they left marks, and I was so frightened that I begged him not to do it, and I did make no effort to defend myself because I was not as strong as he. And after it was over—when it began the children ran outside, and after it was over, I was pushed down on the floor, and I swear this to be true—I am under oath—and when I got up, he said, 'Would you like to go again?'"

Appellant denied that he inflicted corporal punishment upon his wife as a result of a fit of temper. We infer from this that his treatment of her, in this respect, was deliberate.

Appellant testified, and while he professed love for his wife, he never denied any of the matters to which we have referred, and he never expressed any regret for any of his past conduct or promised any different or better conduct in the future.

Both parties have frequently consulted marriage counselors, seemingly without success.

To condemn these parties to a continuation of the life reflected by this record would be for us to condone the conduct it reveals. Only the parties are capable of such forgiveness.

■ It is our opinion that the evidence to sustain the divorce was full and satisfactory.

The contention of condonation is based upon evidence that the parties cohabited as late as September 1964, the separation being October 31, 1964.

■ Condonation is an affirmative defense to a suit for divorce and should have been pleaded. Crittenden v. Crittenden, 214 S.W.2d 670, Tex.Civ.App. Galveston, n. w. h.

■ Mrs. Ritter testified that during the month of October 1964 the arguments between her and her husband continued and

that he continued to call her ugly names. Under these circumstances, condonation, even if it had been pleaded, would not be established. In order for condonation to be an effective bar to a divorce action based on cruel treatment the injured spouse must, after condoning such cruelty, be treated with conjugal kindness and consideration, and, if not accorded this, the former acts of cruelty are revived. Barta v. Barta, 283 S.W. 201, Tex.Civ.App. Austin, n. w. h., Gomez v. Gomez, 234 S.W.2d 941, Tex.Civ. App. El Paso, n. w. h. The evidence refutes compliance with this requirement by appellant. There was no condonation.

The judgment of the trial court is affirmed.

Affirmed.

ARCHER, C. J., not participating.